# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TAYR KILAAB AL GHASHIYAH (KHAN)**
**formerly known as JOHN CASTEEL,**

        **Plaintiff,**

      **v.**                          **Case No. 01-C-10**

**WISCONSIN DEPARTMENT OF**
**CORRECTIONS, JON E. LITSCHER,**
**DANIEL BERTRAND, MICHAEL BAENEN,**
**KENNETH MORGAN, CHRISTOPHER ELLERD,**
**JUDY SMITH, GARY MCCAUGHTRY,**
**GENE DOBBERSTEIN, and PHILLIP MACHT,**

        **Defendants,**

## DECISION AND ORDER

### I. BACKGROUND

Plaintiff Tayr Kilaab al Ghashiyah, formerly known as John Casteel, a Wisconsin state prisoner presently incarcerated at the Waupun Correctional Institution (WCI), filed this pro se civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc-1(a) et seq.,[1] against the Wisconsin Department of Corrections ("DOC") and several corrections officials in their individual and official capacities. By order of July 30, 2001, plaintiff was allowed to proceed in forma pauperis on claims that defendants violated his rights under the First Amendment's

---

[1]Plaintiff actually sought relief against defendants under the Religious Freedom Restoration Act of 1993 (RFRA). However, the court has construed his claims as being brought pursuant to RLUIPA in view of the fact that Congress enacted RLUIPA following the Supreme Court's decision in <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997), which struck down RFRA under the Fourteenth Amendment insofar as it applied to states and localities.

free expression and free exercise clauses, the due process clause of the Fourteenth Amendment, RLUIPA and state law.[2] (Docket # 15.) Specifically, plaintiff alleged that defendants are interfering with his religious liberty, due process rights and/or state law by: (1) prohibiting him from using his legal, religious name; (2) denying him access to religious property such as prayer oil, candles, incense and "smoking sacramen;" and (3) refusing to provide him with a diet consistent with his religious beliefs.[3] Further, a review of the complaint shows that plaintiff also alleged (4) that defendants' policies relating to his religious property were discriminatory and in violation of his rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RUILPA. (Compl., Docket #1 ¶¶116 and 117.)[4] While the initial screening order of July 30, 2001, did not explicitly address that claim, the court recognized the existence of such a claim in its Decision and Order of March 22, 2002. (Docket #55 at 1 and 5-8.)

This case has a long procedural history. Most recently, in response to the parties' cross-motions for summary judgment, the court dismissed plaintiff's state law claim and held that his failure to file DOC form 1090 precluded him from seeking injunctive relief with respect to his religious property claims under the First Amendment and RLUIPA. (Docket

---

[2]Plaintiff's §1983 official capacity claims against DOC and "the natural person defendants" were dismissed in the July 30, 2001, screening order.

[3]Plaintiff also stated First Amendment and RLUIPA claims based on allegations that he was forced to receive a tuberculosis shot containing pork protein. However, those claims were ultimately dismissed for failure to exhaust administrative remedies. (Decision and Order, March 22, 2002, Docket #55 at 5.)

[4]Defendants only address plaintiffs' First and Fourteenth Amendment religious property claims. The have not moved for summary judgment with respect to plaintiff's religious property RUILPA claims.

2

#160.)  Presently pending before the court is defendants' second motion for summary judgment, which will be addressed herein.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id.  For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may satisfy its initial burden by pointing out that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial.  Id. at 322-23.  Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

3

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). In considering a motion for summary judgment, the court may consider any materials that would be admissible or usable at trial, including properly authenticated and admissible documents. Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000).

### III. COMPLIANCE WITH LOCAL RULES

Defendants originally filed their motion for summary judgment on July 15, 2005. By order of December 22, 2005, the court denied the motion, without prejudice, because defendants had not complied with Civil Local Rule 56.1, which obligated them to provide plaintiff with a copy of Civil Local Rule 56.2. (Docket #196.) However, the court permitted defendants to renew their motion for summary judgment, without refiling it, by providing plaintiff with the notice required in the Civil Local Rules within 30 days of the date of the December 22, 2005, order.

Defendants properly renewed their motion on January 6, 2006. Along with their motion for summary judgment, defendants submitted "Proposed Findings of Fact" ("DPFF," Docket #173) which were "supported by specific citations to evidentiary materials in the record" as required under Civil Local Rule 56.2(a). Their submission identified 259 factual propositions.

Civil Local Rule 56.2(b) provides:

4

(b) Response.  Any materials in opposition to a motion filed under this rule must be filed within 30 days from service of the motion and must include:

     (1)    A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists.  The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

     (2)    A party opposing a motion may present additional factual propositions deemed to be relevant to the motion, in accordance with the procedures set out in Subparagraph (a)(2) of this rule. These propositions may include additional allegedly undisputed material facts and additional material facts which are disputed and which preclude summary judgment.

Plaintiff filed an opposing brief and a response to defendants' proposed findings of fact.[5]  However, his response fails to comply with Civil Local Rule 56.2(b), which requires the non-moving party to designate with specificity only those findings believed to establish a genuine dispute for trial and evidentiary materials in the record to support the claim that a dispute exists.  Plaintiff's "response" does not refer at all to any of defendants' proposed findings as mandated under Civil Local Rule 56.2(b)(1).

The local rules are clear as to the consequences of plaintiff's failure to comply with Civil Local Rule 56.2(b)(1): "the Court <u>must</u> conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out."  Civ. L.R. 56.2(e) (emphasis added).  The Court of Appeals for the Seventh Circuit has repeatedly held that district courts are entitled to expect strict compliance with its local rules relating to summary judgment motion practice.  See <u>Cichon v. Exelon Generation Company, L.L.C.</u>, 401 F.3d

---

[5]On February 14, 2006, plaintiff also filed "Objections to Defendants' Motion for Summary Judgment."  (Docket #204.)  Such a pleading is not contemplated under the local rules pertaining to summary judgment motions and will not be considered by the court in resolving the instant motion for summary judgment.  See Civ. L.R. 56.1 and 56.2.

803, 809 (7th Cir. 2005); Ammons v. Aramark Unif. Servs., Inc., 368 F.3d 809, 817 (7th Cir. 2004); Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994). Moreover, plaintiff's failure to comply with local Rule 56.1(b) is not excused by his pro se status. See Greer v. Bd. of Educ. of Chicago, 267 F.3d 723, 727 (7th Cir. 2001); Stevens v. Navistar Int'l Transp. Corp., 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002).

Therefore, because plaintiff has not responded to defendants' proposed findings of fact in the manner set forth under Civil Local Rule 56.2(b), I will accept as true defendants' proposed findings of fact. However, I will accept the additional factual assertions he makes in his response to defendants' proposed factual findings to the extent that they are undisputed and comply with Federal Rule of Civil Procedure 56(e). Averments from plaintiff's affidavits or plaintiff's sworn complaint which are conclusory, not made with personal knowledge, or otherwise not admissible in evidence will not be considered. See Fed. R. Civ. P. 56(e); and Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996).[6]

## IV.  UNDISPUTED FACTS

### A.  Facts Relevant to All Claims

John A. Casteel was convicted and sentenced in two separate trials for armed robbery of two banks while disguised and for possessing a firearm as a felon  In his "Admission Interview Form" maintained by the Office of the Registrar at the Wisconsin State

---

[6]Defendants ask the court to reject all of plaintiff's proposed factual findings on the ground that they are not supported by a sworn affidavit. In particular, defendants argue that the affidavits of plaintiff should be disregarded because "[n]owhere does plaintiff swear the affidavit is true." (Defs.' Reply Mem., Docket #202 at 5.) While plaintiff does not explicitly state in the affidavits that he swears his statements are true, the affidavits were notarized by an officer authorized to administer an oath and were "affirmed" by plaintiff. Therefore, the court finds that all of the substantive requirements for execution of the affidavits have been met. See Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985).

6

Prison in Waupun, Wisconsin (now Waupun Correctional Institution), plaintiff identified his religion as "Mormon." Plaintiff legally changed his name from John A. Casteel to Tayr Kilaab al Ghashiyah on April 22, 1988. (DPFF at 4.) Currently, plaintiff states that he is a member of the "Ismailis sect which is established under the house of Ishmael; seed from the prophet Abraham, and he is a religious member of the [only] Ghaziz society," which is located in Kenosha, Wisconsin. (DPFF at ¶5; First Ghashiyah Aff. ¶7.)

Defendant Department of Corrections (DOC) is an agency of the State of Wisconsin and is sued only under RLUIPA. Defendant Jon Litscher was employed as the Secretary of the DOC from January 9, 1999, to January 10, 2003. (DPFF at ¶7.) Defendant Daniel Bertrand was the Warden at the Green Bay Correctional Institution (GBCI) at all times relevant to the facts alleged against him in the complaint. William J. Pollard, who is not named as a defendant, is the current Warden at GBCI. Defendant Michael Baenen was the Deputy Warden at GBCI at all times relevant to the facts alleged against him in the complaint. Defendant Kenneth Morgan was the Warden at the Racine Correctional Institution (RCI) at all times relevant to the facts alleged against him in the complaint. Defendant Gene Dobberstein was the Deputy Warden at the RCI at all times relevant to the facts alleged against him in the complaint. Defendant Christopher Ellerd, the Security Director at RCI from July 15, 1990, to July 20, 2001, has not been served with process in this case. (DPFF at ¶¶ 14 and 15.) To date, defendants Jane Doe and Peter Doe also have not been served with process in this case. (DPFF at ¶16.)

Three other wardens were named as defendants in this case: defendant Judy Smith was the Warden at the Oshkosh Correctional Institution (OCI), Defendant Gary McCaughtry was the Warden at WCI and Philip Macht was the Warden of the Wisconsin Resource

7

Center (WRC).  All of the defendants except the DOC were sued in their official and individual capacities under §1983 and RLUIPA.  (DPFF at ¶22.)  The official capacity claims under §1983 against the individual defendants were dismissed by order of July 30, 2001. (DPFF at 27.)

**B.    Facts Relating to Plaintiff's Religious Diet Claims**

Plaintiff claims that "Defendants Litscher, Morgan, Ellerd, Dobberstein, Bertrand, Smith and Jane Doe intentionally denied incarcerated persons religious diets according to Islamic beliefs" in violation of RLUIPA and the free exercise clause of the First Amendment. Plaintiff does not claim that defendants DOC, McCaughtry or Macht denied him his religious diet.   According to plaintiff, "persons of the Islamic faith may not eat pork or pork by-products and the meats eaten by Muslims must be killed in a kosher manner by invoking the name of Allah."   (DPFF at ¶28.)   He contends that Muslims may not eat meals with implements which were used for pork such as pots and utensils and that the meat must be served in a kosher manner.  (DPFF at ¶28.)

The Qur'an, Islam's revealed text, prohibits the consumption of alcohol, pork and pork by-products.  In addition, many, but not all practicing Muslims follow certain standards of slaughter and preparation of non-prohibited meat and poultry, which is referred to as "halal." (Id.)  Fish is considered halal in and of itself and is not required to be slaughtered in any particular manner.  (Id.)  "Halal" is a comprehensive Islamic term encompassing not only the matters of food and drink but all other matters of daily life

Many Muslims pronounce the name of Allah on all animals while slaughtering.  (Id.) There is no prohibition under Islamic law against preparing, cooking, serving or eating halal

8

food using pots, pans, dishes or utensils that have been used to prepare, cook, serve or eat food that have at some time contained pork or pork by-products. If a Muslim is confined in prison, it is not forbidden under Islamic law ("haram") for him to eat meat that he does not know to be halal as long as the meat is not pork. (DPFF at ¶81.) There is no tenet of Islam that requires Muslims to eat meat; therefore, a vegetarian Muslim does not violate any tenet of Islam. (DPFF at ¶ 82.)

Religious practices of inmates and the accommodation of those practices by the Wisconsin Department of Corrections is governed by DOC Internal Management Procedure (IMP) 309 #6. (DPFF at ¶83.) According to DOC 309 IMP #6, inmates who wish to observe religiously-motivated dietary restrictions and receive accommodation from the institution in receiving a religious diet must submit a written request for a religious diet to the prison chaplain who evaluates the request while consulting with the warden, institutional food services staff and the staff of the Division of Adult Institutions Central Office as needed. Pursuant to DOC 309 IMP #6, an inmate must complete DOC form 1090, a Religious Preference form, designating a religion in order to participate in activities within a specified religious group. (DPFF at ¶97.)

On December 28, 2001, Douglas Reimer, the head of Food Services at GBCI and Michael Donovan, the Chaplain at GBCI went to plaintiff's cell to interview him to determine what religious diet he sought. Plaintiff informed them that he needed a non-pork diet, kosher meat and plenty of vegetables. (DPFF at ¶86.) When plaintiff was asked to identify the religious reasons for his dietary needs he mentioned "Qur'anic injunctions not to eat swine, injunctions to eat meat that is sacrificed in the name of Allah and injunctions not to use pots that were previously used for cooking pork. (DPFF at ¶87.)

9

When asked to explain his understanding of the terms "kosher" and "halal," he stated that "kosher" meant that the animal is slaughtered and sacrificed in the name of Allah or in the name of God and cooked in pots not used for pork. (DPFF at ¶88.) He also stated that "halal" was a company that serves kosher meats. (Id.) On February 21, 2002, Chaplain Donovan asked plaintiff to fill out the Religious Preference form DOC 1090. Plaintiff refused to complete the form. (DPFF at ¶¶ 92 & 93.)

Basic rules governing inmate religious dietary practices are also contained in DOC 309 IMP #6B "Religious Diets." These procedures provide that it is the policy of the Division of Adult Institutions to make religious diets available through standard menu alternatives as resources permit for individuals whose religious beliefs require the adherence to religious dietary laws. Inmates must complete and submit a "DOC 2167 Request for Religious Diet" form to be considered for a religious diet. Plaintiff has not submitted a DOC 2167 Request for Religious Diet form. (DPFF at ¶106.)

The Muslim halal diet is not available to DOC inmates Instead, DOC provides alternative dietary choices to inmates. Specifically, DOC inmates have the alternative diets of self-select or the vegan/vegetarian diet to choose from The vegan diet is a totally plant-based, animal-free diet plan. The food is obtained solely from plant sources so that it can fill the needs of any inmate who says that the meat is not prepared in accordance with their religious dietary laws. (Id.) The self-select diet gives the inmate the choice to consume or abstain from the foods provided on the general menu. (DPFF at ¶¶ 108-109.) WCI has not served pork since February 1995. All dishes, trays, and utensils at WCI are washed at the temperatures required by state code.

10

With respect to his religious diet claims, the record shows that plaintiff has exhausted administrative remedies with respect to two inmate complaints: (1) OSCI-1997-2131; and (2) RCI-1997-3797. In inmate complaint OSCI-1997-2131, plaintiff complained that OSCI did not provide kosher meats and that pots and utensils that had previously been used to cook pork were used in the kitchen. In inmate complaint RCI-1997-3797, plaintiff complained about the fact that RCI and other institutions served pork and that other foods were exposed to pork or cooked in pots that were previously used for pork.

## C. Facts Relating to Plaintiff's Religious Name Claims

In 1988, while incarcerated in the Wisconsin Prison System, plaintiff obtained a court order legally changing his name to Tayr Kilaab al Ghashiyah. (DPFF at ¶134.) DOC did not oppose the name change petition in court even though its policy is to oppose all inmate name change petitions in court. (DPFF at ¶¶137-138.) Currently, plaintiff refers to himself as Tayr Kilaab al Ghashiyah (Khan). (DPFF at ¶134) The "(Khan)" suffix was not included in the 1988 name change order. (Id.)

It is not a pillar of Islam that one who converts to Islam use only an Islamic name. (DPFF at ¶123.) It is consistent with the teachings of the Prophet Muhammad to change one's first name when one becomes a Muslim. (Id.) It is not offensive to Islam to use one's entire original name in addition to one's Muslim name. (Id.) With respect to the origins and translation of his name, plaintiff has stated under oath that "Tayr Kilaab" "translate[s] to 'Bird dog.'" (DPFF at ¶128.) When asked to "[e]xplain how 'Tayr Kilaab' is Muslim or otherwise connected with Islam," plaintiff responded that Tayr means "bird." (DPFF at ¶129.) He has also explained that "Kilaab" means "dog." (DPFF at ¶130.)

Case 2:01-cv-00010-LA    Filed 09/29/06    Page 11 of 37    Document 218

Prior to March 2000, plaintiff's use of his new name was prohibited by the DOC on the ground that the plaintiff was convicted under the name "John Casteel" and that for DOC purposes, he would have to continue using the name as it appeared on his Judgment of Conviction unless the judgment was amended to reflect his name change. (DPFF at ¶138.) In March 2000, DOC changed its policy regarding plaintiff's Arabic name. (DPFF at ¶139.) In a memo to plaintiff dated March 28, 2000, DOC stated that plaintiff "will be allowed to use [his] legal name together with [his] Judgment of Conviction name of Casteel along with referencing [his] DOC number." Carbon copies of this memo were distributed to the GBCI mailroom, security office, the inmate complaint examiner's office and the records office. (Id.)

Plaintiff was formally notified on March 28, 2000, that he could use his new legal name as long as he also referenced the name on his Judgment of Conviction and his DOC inmate number. (DPFF at ¶140.) In a memo dated April 18, 2005, DOC established a cross-reference to allow plaintiff to use his legal name for mail, visits and business purposes, including notary and financial purposes, without reference to his former name. (DPFF at ¶142.) The Registrar circulated this memo to the mail room, the business office and seven other officials or divisions with a directive that the memo be posted and complied with. (DPFF at ¶143.)

Defendants contend that plaintiff has exhausted administrative remedies with respect to three inmate complaints concerning the use of his religious name. Plaintiff filed WCI-1991-691 on March 18, 1991, in which he claimed that the name "Mr. Tayr Kilaab al Ghashiyah" was crossed off an envelope addressed to him under that name and "f/n/a John Casteel." (DPFF at ¶169.) Inmate complaint WCI-1991-2352 was filed on September 3, 1991, under the name "Tayr Kilaab/Casteel" and alleged that legal documents addressed

12

to plaintiff as "Tayr Kilaab al Ghashiyah" had been returned to sender. (DPFF at ¶176.) In this complaint, plaintiff also stated that he maintains "all of his legal litigation in his legal name of Tayr Kilaab al Ghashiyah and he knows that the prison official, disciplinary committee, records office and Inmate complaint department is aware that this is the complainants [sic] true and legal name." (DPFF at ¶177.) The ICE, Melanie Hogue, wrote plaintiff a note asking for the legal documentation supporting his claimed name change. (DPFF at ¶178.) Plaintiff did not provide the requested documentation. (DPFF at ¶181.) Indeed, WCI did not receive a copy of the Order for Change of Name until May 24, 1993. (DPFF at ¶183.)

Plaintiff filed Inmate Complaint GBCI-1995-038 on January 13, 1995, alleging that the GBCI mailroom "had delivered a letter to him addressed to Tayr Kilaab al Ghashiyah, but Sergeant Lardinois had not let him send letters with 'Tayr Kilaab/Casteel' and his inmate number returning these to him on December 1, 1994." (DPFF at ¶185.) Ultimately, Warden Bertrand and the Secretary's designee, Ave Bie, each dismissed the inmate complaint. (DPFF at ¶¶ 191 & 192.)

Plaintiff also alleges that he was found guilty in connection with five conduct reports because he used his dual name: (1) conduct report #351609 (found guilty of misuse of stamps and false names and titles) (DPFF at ¶¶146-148; and "Phone Conference held by Court, Docket #165 at 5); (2) conduct report #351335 (found guilty of replacing name tag on cell with one that read "Tayr Kilaab" in large letter, "Casteel" in small letters with no inmate number); (DPFF at ¶¶153-155; Docket 165 at 5); (3) conduct report #323981 (plaintiff found guilty of signing a formal letter with a name other than "John Casteel") (DPFF at ¶¶167-168; Docket #165); (4) conduct report #891139 (plaintiff found guilty of disobeying orders

13

regarding the use of his dual name (DPFF at ¶¶208-222; Docket #165); and (5) conduct report #891191 (plaintiff found guilty of submitting a written statement with his dual name during a hearing in connection with conduct report #892184 (DPFF at ¶¶228-237; Docket #165).

Plaintiff also maintains that the disposition of other conduct reports was affirmed because he used his dual name in connection with the appeal forms: (1) conduct report #316517 (DPFF at ¶156; Docket #165 at 5); (2) conduct report #348741 (plaintiff alleges defendant McCaughtry affirmed disposition of conduct report #348741 knowing that plaintiff was denied a request for witnesses at his due process hearing because his dual name appeared on the forms) (DPFF at ¶157; Docket #165); (3) conduct report #342462 (plaintiff alleges defendant McCaughtry refused to accept his appeal forms regarding this conduct report because his dual name appeared on the forms) (DPFF at ¶158; Docket #165); (4) conduct report #340770 (alleges that defendant McCaughtry affirmed the disposition of this conduct report knowing that plaintiff was denied a request for witnesses becasue his dual name appeared on the request form) (DPFF ¶¶149-152; Docket #165); (5) conduct reports ## 429031 and 429032 (plaintiff alleges defendant McCaughtry rejected appeal forms related to these conduct reports because his dual name appeared on the forms (DPFF at ¶¶159-166; and Docket #165); and (6) conduct report #892184 (plaintiff alleges that defendant Morgan rejected his appeal because he did not use the name under which he had been sentenced) (DPFF at ¶¶223-227; Docket #165).

Plaintiff avers that use and possession of oil, incense and candles are an important part of his religious practice and beliefs. Prison regulations prohibit the use and possession of oil, incense and candles. However, prison regulations permit inmates to possess similar

14

items such as "baby oil, skin care lotions, liquid soap, Ben Gay, after shave, English leather, magic shave power, Revlon relaxer, sun-block lotion and pertroeum jelly from the prison canteen." (R. 19 ¶ 24.) Furthermore, plaintiff avers that "Native American inmates are allowed to possess religious items sucyh as sage to burn within their cages, and they are allowed to smoke sacrament and to possess these religious items."

## V. DISCUSSION

### A.    Exhaustion of Administrative Remedies

Defendants argue that, with respect to his claims regarding his religious diet and the use of his religious name, plaintiff has only exhausted his administrative remedies with respect to the following five claims: (1) that defendant McCaughtry allegedly violated plaintiff's rights with respect to his "religious name" when he dismissed an inmate complaint alleging plaintiff received mail after his legal name was crossed off it (WCI-1991-691); (2) that defendant McCaughtry allegedly violated plaintiff's rights when he dismissed an inmate complaint that legal documents addressed to "Tayr Kilaab al Ghashiya" had been returned to sender (WCI-1991-2352);[7] (3) that defendant Bertrand allegedly violated plaintiff's rights with respect to the use of his religious name when he dismissed an inmate complaint alleging a sergeant had not forwarded mail with the name "Tayr Kilaab/Casteel" on it (GBCI-1995-038); (4) that defendant Smith allegedly violated plaintiff's rights with respect to his religious diet when she dismissed an inmate complaint about OSCI not providing "kosher"

_____

[7]The parties have stipulated to an eleven-year statute of limitations with respect to actions under 42 U.S.C. §1983 and a four-year statute of limitations with respect to claims under RLUIPA. It is undisputed that plaintiff is only allowed to proceed under §1983 against defendant McCaughtry with respect to the claims set forth in inmate complaints WCI-1991-691and WCI-1991-2352 because the RLUIPA claims involving these inmate complaints are time-barred.

Case 2:01-cv-00010-LA    Filed 09/29/06    Page 15 of 37    Document 218

meats and kitchenware (OSCI-1997-2131); and (5) that defendant Morgan allegedly violated plaintiff's rights with respect to his religious diet when he dismissed an inmate complaint asking RCI to discontinue serving pork and begin maintaining halal kitchenware (RCI-1997-3797). Defendants argue that because the plaintiff's exhausted claims are limited to these five, all of the other religious diet and religious name claims should be dismissed.[8]

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002) (citing Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999)). Failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving. Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004). Absent more stringent administrative requirements, an inmate need not state "facts, legal theories, or demand relief," so long as the grievance objects "intelligibly to some asserted shortcoming." Strong v. David, 297 F.3d 646 (7th Cir. 2002).

Plaintiff does not challenge defendants' assertion that, except for the five claims identified above, he has failed to exhaust his administrative remedies with respect to his religious diet and name claims. Rather, he argues that the exhaustion requirement of the

---

[8]Defendants do not raise exhaustion as a bar to plaintiff's First Amendment, Fourteenth Amendment and RLUIPA claims concerning the denial of his religious property. Instead, defendants argue that those claims should be dismissed on the ground that plaintiff has not articulated damages relating to the religious property claims. (Defs.' Br. in Support, Docket #171 at 7.)

16

PLRA is not applicable to him for three reasons: (1) the "substantial compliance " doctrine rather than PLRA's exhaustion requirement applies to claims that arose before its effective date of 1996; (2) defendants are re-litigating the issue of exhaustion; and (3) defendants prevented him from pursuing these administrative remedies by not allowing him to file his complaints under the name "Tayr Kilaab/Casteel."

Plaintiff first argues that because many of his claims occurred before the effective date of the PLRA amendments, he is not subject to the exhaustion requirements of the PLRA. Instead, he maintains that the "substantial compliance" exception to the PLRA exhaustion requirement applies to his claims.

It is clear that plaintiff filed suit after enactment of the PLRA on April 26, 1996. As a result, the statute served plaintiff with notice that he could not enter court after that date until such time as he had exhausted the prison's grievance process. McCoy v. Gilbert, 270 F.3d 503, 510 (7th Cir. 2002). However, the Court of Appeals for the Seventh Circuit has recognized that where

> the complained of event transpired before the enactment of the PLRA, a prisoner can show exhaustion by demonstrating that he substantially complied with the institution's grievance policy. The prisoner must have clearly given the institution notice of his particular demands and reasonably triggered an attempt to resolve them.

McCoy, 270 F.3d at 512 (citing Smith v. Zachary, 255 F.3d 446 452 (7th Cir. 2001)).

Here, plaintiff asserts that he substantially complied with the institution's grievance policy with respect to his claims that occurred before 1996. However, despite his obligation on summary judgment to designate specific facts to support his contention, plaintiff does not identify any evidence in the record to substantiate his assertion. It is not the job of the courts to "scour the record" looking for such evidence. Ammons v. Aramark Uniform

17

Services, Inc., 368 F.3d 809, 818 (7th Cir. 2004) (citing Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing.")).

Even though plaintiff did not point to any evidence supporting his argument, the court notes that defendants' proposed findings of fact identify a number of complaints made by plaintiff which, while not technically exhausted, could arguably be said to have put the institution on notice of plaintiff's demands. The problem is that these complaints all related to events that transpired after the enactment of the PLRA, which means that they are subject to the statute's exhaustion requirement.[9] Therefore, plaintiff has not satisfied the substantial compliance exception to the exhaustion requirement of the PLRA.

Plaintiff next argues that defendants are precluded from raising exhaustion as a ground for summary judgment because they did not advance this argument in their first motion for summary judgment. It is true that defendants prevailed on an earlier motion for summary judgment in which they argued that plaintiff failed to exhaust his administrative remedies in connection with his tuberculosis testing claim. (Order of March 22, 2002, Docket #55.) At that time, however, they did not address whether any of plaintiff's other claims had been exhausted. Thus, contrary to plaintiff's suggestion, defendants are not

---

[9] For example, in inmate complaint OSCI-1997-1051 filed on April 14, 1997, plaintiff complains that OSCI failed to provide a protein substitute when pork was on the menu. (DPFF at ¶¶36-39.) Plaintiff did not appeal the dismissal of this inmate complaint to the CCE as he was required to do in order to exhaust his administrative remedies. (DPFF at ¶¶40 and 41.) Similarly, plaintiff made informal written complaints to Secretary Litscher in 2000 regarding his religious dietary requests. (DPFF at ¶¶57 and 58.) No formal complaints regarding those occurrences were filed.

18

barred by the doctrine of res judicata from raising exhaustion in a successive motion for summary judgment. See Whitford v. Boglino, 63 F.3d 527, 530 (7th Cir. 1995).

Finally, plaintiff claims that the rejection of his grievance forms simply because his "dual name appeared on the forms" made it impossible for him to utilize the prison's grievance system. (Pl.'s Br. in Opp'n at 2, Docket #185.) The Court of Appeals for the Seventh Circuit has recognized that administrative remedies may not be "available" to a plaintiff where prison employees prevent an inmate access to them. See Dale, 376 F.3d at 656 ("If prison officials fail to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies."). However, for proper exhaustion "a person must follow the rules governing filing and prosecution of a claim," including the prison's rules for filing an appeal. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Further, a complaint "must contain the sort of information that the administrative system requires." Strong, 297 F.3d at 649.

Again, plaintiff does not point to any evidence in the record to substantiate his contention that prison officials prevented him from filing grievances. My independent review of the record uncovered one instance in which plaintiff's grievance form was rejected for including his dual name. In this instance, plaintiff was notified of the procedural error and instructed on how to cure it. Specifically, he was told to use only his incarcerated name – John Casteel – on the complaint form. (Docket 19 at Ex. 29.) Therefore, rejection of a complaint for failing to follow the institution's procedural rules, while allowing the plaintiff an opportunity to correct his mistake does, not render the administrative remedy "unavailable" for purposes of exhaustion.

19

Although not specifically referenced by plaintiff as support of his argument, I note that plaintiff's first affidavit (Docket #19) points to documentation related to GBCI-0038-95 and GBCI 2000-9413 as evidence that inmate complaint examiners were making it difficult for him to exhaust his administrative remedies. (Docket #19, ¶¶124-25 & Exs. 34-35.) However, both of these inmate complaints were ultimately accepted and addressed on their merits. (DPFF at ¶¶185-193 and 245-248.) While inmate complaint GBCI 2000-9413 was initially rejected, it was ultimately accepted after the department issued its March 28, 2000, memorandum allowing plaintiff to file inmate complaints with his "dual" name. (DPFF at ¶¶ 245-48.)

In sum, plaintiff has failed to provide any evidence showing that he was deprived of access to the administrative remedies. Moreover, the fact that plaintiff has managed to file numerous inmate complaints and exhaust a number of them also undermines his contention that administrative remedies were not available to him. Consequently, I find that with respect to plaintiff's claims concerning his religious diet and the use of his religious name, plaintiff has exhausted only the five claims identified earlier in this decision and order. Defendants are, therefore, entitled to summary judgment with respect to all other religious diet and religious name claims pursuant to 42 U.S.C. § 1997e(a).

As an additional matter, defendants argue in their brief that defendants DOC, Litscher and Macht should be dismissed as defendants in this case because there are no remaining claims against those defendants. Contrary to defendants' assertion, plaintiff has raised claims concerning the denial of religious property against defendants DOC and Litscher. (Pl.'s Resp. to Interrogatories and Production of Documents & Admissions, Docket #168 at 3.) However, plaintiff's only claim against Macht is that Macht violated his rights with respect

to his religious name and, as the court has found, plaintiff did not exhaust that claim. Therefore, Macht will be dismissed as a defendant in this action.

## B.    Physical Injury Requirement of 42 U.S.C. §1997e(e)

Defendants next assert that plaintiff's five exhausted claims relating to his religious diet and religious name and his claims that he was deprived of his religious property should be dismissed pursuant to 42 U.S.C. §1997e(e) because plaintiff did not sustain any cognizable damages.[10]   Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e).  It is important to recognize that while §1997e(e) limits the relief available to prisoners who cannot allege a physical injury,  it does not bar their lawsuits altogether.  Calhoun v. Detella, 319 F.3d 936, 940 (7th Cir. 2003).  The Court of Appeals for the Seventh Circuit has held that §1997e(e) "bars recovery of compensatory damages 'for' mental and emotional injuries suffered . . . [but] is inapplicable to awards of nominal or punitive damages."  Id. at 941.

According to information submitted by plaintiff regarding his request for damages, he is seeking compensation for the fact that he suffers from "post-traumatic stress disorder" due to the persecution of his religious beliefs by the defendants. (Phone Conference Held by Court at Docket #165 and Supplement at Docket #166.)    Plaintiff also states in his supplemental damages statement that he seeks to recover damages for the "physical pain

_____

[10] Defendants also argue that the doctrine of Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), bars plaintiff's claims seeking compensatory damages related to the loss of good time incurred as a result of conduct reports issued by defendants.  I need not reach the merits of this argument since I have found that plaintiff did not exhaust any claims relating to his conduct reports.

21

and suffering for years of weight loss caused by inadequate diet." (Docket #166.) In addition, these documents reveal that, along with compensatory damages, plaintiff also seeks punitive for the deprivation of his constitutional rights.

In order for plaintiff to recover compensatory damages for his alleged emotional injuries, §1997e(e) dictates that he must first show that he suffered a physical injury as a result of defendants' actions. Plaintiff does not allege that he suffered physical injuries as a result of defendants' actions concerning the use of his religious name or his religious property. The only physical injury identified by plaintiff is his alleged weight loss, which he claims was due to an inadequate diet.

At least one court, albeit in an unpublished decision, has held that weight loss that is more than de minimis can satisfy the physical injury requirement of §1997e(e). <u>Pratt v. Corrections Corp. of America</u>, 124 Fed. Appx. 465, 467 (8th Cir. 2005) (holding that allegations that plaintiff suffered 30-pound weight loss due to meals that lacked inadequate nutritional value arguably satisfied the physical-injury requirement of §1997e(e)). While plaintiff states in his supplemental damages statement that he "suffered a weight loss" and was put on a special diet, he does not provide any evidence as to the degree of his weight loss. Plaintiff's statement in his unsworn brief in opposition to defendants' motion for summary judgment that his weight dropped from 155-165 pounds to 133 pounds is not supported by any evidence in the record. In any event, this does not appear to be the type of substantial weight loss that would equate to a physical injury. Because plaintiff has not put in any evidence upon which a trier of fact could conclude that he suffered a physical injury due to defendants' actions, his claims for compensatory damages are barred by

22

§1997e(e). Defendants, therefore, are entitled to summary judgment with respect to such claims.

Defendants argue that this finding requires dismissal of all of plaintiff's claims for monetary damages. Their argument ignores the fact that plaintiff is also seeking punitive damages. It is clear that §1997e(e) does not restrict plaintiff's claims for punitive damages with respect to his First Amendment and Fourteenth Amendment claims. The Court of Appeals for the Seventh Circuit has found that "[b]ecause punitive damages are designed to punish and deter wrongdoers for deprivations of constitutional rights, they are not compensation 'for' emotional and mental injury." Calhoun, 319 F.3d at 942. Based on this finding, the Court of Appeals went on to hold that §1997e(e) does not bar a suit seeking punitive damages to vindicate First Amendment and Eighth Amendment violations even absent a showing a physical injury. Id. This rationale extends equally to plaintiff's Fourteenth Amendment claims.

However, it is unclear whether, absent physical injury, §1997e(e) precludes punitive damages in relation to a statutory RLUIPA claim. To date, it does not appear that any federal court has published an opinion resolving this question and neither party addresses this issue in their briefs. Regardless, I need not address the issue at this time because defendants have not moved for summary judgment on this basis.

**C.    Qualified Immunity**

Defendants assert that summary judgment should be entered in their favor with respect to plaintiff's five exhausted religious diet and religious name claims because they

23

are shielded from liability for all damages by the doctrine of qualified immunity.[11]  Qualified immunity is immunity from suit rather than a mere defense to liability.  Katz v. Saucier, 533 U.S. 194, 200-201 (2001).   Determining whether a defense of qualified immunity is applicable involves a two-step test.  Id. at 199.  First, the court is to decide whether "[t]aken in the light most favorable to the party asserting the injury," the "facts alleged" show that defendant's conduct violated a constitutional right.   Id. at 201.   In the event that no constitutional right would have been violated if the allegations were established, there is no need for further analysis of the qualified immunity issue.   Id.

However, if a violation could be demonstrated based on a favorable view of the parties' submissions, the analysis proceeds to the second step, which requires that the court to determine whether the right was clearly established.   Id.   Such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.   "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). Plaintiff has the burden to show that defendants violated his clearly-established rights. Kernats v. O'Sullivan, 35 F.3d 1171, 1176 (7th Cir. 1994).

### 1.    Religious Diet Claims

---

[11]Defendants limit their qualified immunity argument to plaintiff's religious diet and religious name claims under the First Amendment and RLUIPA.  They do not assert that they are entitled to qualified immunity on plaintiff's religious diet and religious name claims under the Fourteenth Amendment's equal protection and due process clauses. Further, defendants do not contend that qualified immunity shields them from liability for punitive damages with respect to plaintiff's religious property claims under the First and Fourteenth Amendments and RLUIPA.  Thus, these claims will survive defendants' motion for summary judgment.

24

There are two exhausted claims concerning plaintiff's religious diet needs: (1) that defendant Smith allegedly violated plaintiff's rights with respect to his religious diet when she dismissed an inmate complaint about OSCI not providing "kosher" meats and kitchenware (OSCI-1997-2131); and (2) that defendant Morgan allegedly violated plaintiff's rights with respect to his religious diet when he dismissed an inmate complaint asking RCI to discontinue serving pork and begin maintaining halal kitchenware (RCI-1997-3797). Defendants argue that they are entitled to qualified immunity because inmates do not have a clearly established right under the First Amendment or RLUIPA to ritually slaughtered halal meat or halal kitchenware.

The United States Supreme Court has yet to rule on whether prisons are required under the First Amendment or RLUIPA to provide inmates with meals that meet the specific requirements of their religion. However, many lower courts have addressed this question in the context of the First Amendment. Notably, one court faced with a similar claim by a Muslim inmate conducted it's own review of eleven, pre-2002, cases on the issue and concluded that

> the vast majority of these courts ha[ve] determined that a prison permissibly discharge[s] its constitutional duty to respect the dietary beliefs of Muslim inmates by offering an alternative, pork-free diet, and more broadly, that the law permit[s] prison authorities to limit the dietary options available to prisoners in the interests of reducing the costs and burdens entailed in accommodating the smorgasbord of food-related religious beliefs likely to be encountered in a prison population.

Hudson v. Maloney, 326 F. Supp. 2d 206, 211 (D. Mass 2004).

One of the cases relied on by the court in Hudson was the decision of the Court of Appeals for the Fifth Circuit in Kahey v. Jones, 836 F.2d 948, 949 (5th Cir. 1988). In Kahey, the court was faced with a prisoner's demand "to have the prison prepare not just a non-pork

25

diet, but a specially tailored menu in a special way to accommodate her practice of Islam."
Id.  The court, in rejecting the plaintiff's claims, held that "prisons need not respond to particularized religious dietary requests." Id. at 950; see also Abdullah v. Fard, 974 F. Supp. 1112, 1118-1119 (N.D. Ohio 1997) (finding no constitutional violation where a Muslim inmate was provided a "nutritionally adequate alternative" for a meat entrée, in place of halal meat); see generally Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (stating that, in deciding whether the denial of an inmates' specific dietary request violates the First Amendment, courts must balance the infringement of the right of free exercise of religion against the cost of accommodation and whether alternative means are available that allow the inmate to practice his religion).

It is undisputed that plaintiff was, at all relevant times, provided with a pork-free or vegetarian diet in lieu of halal meat (DPFF at ¶¶107-109), and that all kitchen utensils were sterilized after use (DPFF at ¶116).  Thus, in view of the case law discussed above, no reasonable prison official would have concluded that at the time of the alleged conduct Muslim inmates had an established First Amendment right to halal meat prepared with special halal kitchenware and utensils.

With respect to plaintiff's claim under RLUIPA, plaintiff has not identified any case law holding that a prison official's refusal to provide an inmate with halal meat or halal utensils violates RLUIPA or its predecessor, RFRA.  See Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993) ("Under the prevailing law, Rice had the burden to point out a closely analogous case that established that he had a constitutional right to be free from the conduct alleged.]").  Courts considering the issue have instead concluded that, when a prison provides an inmate with an alternative menu meeting the requirements of a halal diet, it does

26

not violate his rights under RFRA. See <u>Abdul-Malik v. Goord</u>, No. 96 CIV. 1021, 1997 WL 83402, at *6 (S.D.N.Y. February 27, 1997) (noting that "[a]ll that is required for a prison diet not to burden an inmate's free exercise of religion is 'the provision of a diet sufficient to sustain the prisoner in good health without violating [his religion's] dietary laws'") (quoting <u>Kahane v. Carlson</u>, 527 F.2d 492, 496 (2d Cir. 1975)).

In view of the above, I conclude that it was not clearly established in 1997 that plaintiff had a statutory right under RLUIPA to halal meat at every meal or food prepared with special halal kitchenware, where he was provided a nutritional dietary alternative that was consistent with his religious beliefs. Therefore, defendants are entitled to qualified immunity from all damages on plaintiff's religious diet claims under RLUIPA.[12]

### 2.    Religious Name Claims

Defendants contend that qualified immunity bars plaintiff's First Amendment and RLUIPA claims relating to the use of his Muslim name. As discussed previously in this decision, plaintiff has exhausted only three claims involving his Muslim name: (1) that defendant McCaughtry allegedly violated plaintiff's rights with respect to his religious name when he dismissed an inmate complaint alleging plaintiff received mail after his legal name was crossed off it (WCI-1991-691); (2) that defendant McCaughtry allegedly violated plaintiff's rights when he dismissed an inmate complaint that legal documents addressed to "Tayr Kilaab al Ghashiya" had been returned to sender (WCI-1991-2352);[13] and (3) that

---

[12]Because I have concluded that defendants' are entitled to qualified immunity on plaintiff's religious diet claims, I will deny defendants' request to serve defendant Ellerd, who was named but not served, as service would be futile.

[13] It is undisputed that plaintiff is only allowed to proceed under §1983 against defendant McCaughtry with respect to the claims set forth in inmate complaints

27

defendant Bertrand allegedly violated plaintiff's rights with respect to the use of his religious name when he dismissed an inmate complaint alleging that a sergeant had not forwarded mail with the name "Tayr Kilaab/Casteel" on it (GBCI-1995-038).

Defendants claim that during the time in which plaintiff alleged he was prevented from using his Arabic name (1991-1995), there was no clearly established right to a dual-name policy.  See Azeez v. Fairman, 795 F.2d 1296 (7th Cir. 1986) (holding that "the right to make prison staff recognize a religiously motivated name change is not clearly established").  Defendants argue that Azeez establishes that during time period in question (1991-1995), the issue of whether inmates had a right to recognition of their religious name change was an open question.  Thus, they maintain that it could not be said that they violated a clearly established right when they denied plaintiff the use of his Muslim name.

Plaintiff contends that the defense of qualified immunity is inappropriate.  He asserts that "the statutes and regulations pertaining to incarcerated persons and prison operations did not empower defendants to undertake such acts."  (Pl.'s Brief in Opp'n at 10.)

Contrary to defendants' position, the holding of the Court of Appeals in Azeez actually was that, in 1981, it was not clearly established that an inmate had a right to recognition of his religious name.  See Malik v. Brown, 71 F. 3d 724, 728 (9th Cir. 1995).  Since then however, various courts have spoken on this issue.  In 1995, the Court of Appeals for the Ninth Circuit reviewed various decisions of federal courts over the preceding 16-year period addresseding the issue of an inmate's use of his religious name, noting that,

_____

WCI-1991-691and WCI-1991-2352 because the RLUIPA claims involving these inmate complaints are time-barred.

28

> [t]he cases have consistently supported three propositions. First, an inmate
> has a First Amendment interest in using his religious name, at least in
> conjunction with his committed name. Second, an inmate cannot compel a
> prison to reorganize its filing system to reflect the new name. Third, in states
> where inmates are allowed to change names legally, prisons are generally
> required to recognize only legally changed names.

Malik, 71 F.3d at 727 (internal citations omitted). In Malik, the court held that "the law

regarding a prisoner's First Amendment right to use his new legal name in conjunction with

his committed name was clearly established in 1990." Id. at 730. Other courts have come

to the same conclusion. See Salaam v. Lockhart, 905 F.2d 1168, 1175-76 (8th Cir. 1990)

(holding that state authorities must deliver mail to prisoner addressed to him under his

legally-changed religious name and not the name under which he was committed); Felix v.

Rolan, 833 F.2d 517, 519 (5th Cir. 1987) (holding First Amendment not violated in situation

in which "prison had not refused to recognize Al Uqdah's new name, it merely requires that

for administrative efficiency he include his former name as an identifying alias").

In this case, it is undisputed that plaintiff legally changed his name in 1988. (DPFF

at ¶134.) Between 1988 and 2000, use of his legal name was prohibited by the DOC.

(DPFF at ¶138.) During this time period, plaintiff was only allowed to use his convicted

name. (Id.) A reasonable prison official should have known that this violated plaintiff's first

amendment rights. Accordingly, defendants' motion for summary judgment on this claim

based on qualified immunity will be denied.

Defendants assert that they are entitled to qualified immunity on plaintiff's religious

name claims under the First Amendment and RLUIPA. However, they advance no

argument supporting their contention with respect to the RLUIPA claim. Rather, their entire

argument focused on the issue of qualified immunity as to plaintiff's First Amendment claim.

29

As a result, they have failed to meet their burden concerning their contention that plaintiff's RLUIPA claim based on the use of his religious name is barred by the doctrine of qualified immunity. See Celotex Corp., 477 U.S. at 323 (moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law.)

### D.  Merits of Plaintiff's First Amendment and RLUIPA Claims Concerning Plaintiff's Religious Name

Having lost on their argument that they are entitled to qualified immunity on plaintiffs' First Amendment and RLUIPA claims concerning the use of his religious name, defendants now argue that they are entitled to summary judgment because plaintiff cannot, based on the undisputed facts, prevail on the merits of these claims.

#### 1.    RLUIPA

Under RLUIPA, governmental imposition of a "substantial burden on the religious exercise" of a prisoner is prohibited, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc-1. The phrase "religious exercise" is to be construed broadly to include belief and profession as well as the performance of physical acts such as assembling with others to worship or participation in sacramental use of certain objects. Cutter v. Wilkinson, 125 S.Ct. 2113, 2121 (2005). A "substantial burden" on religious exercise under the statute is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003).

Since there is minimal case law interpreting RLUIPA's key terms, courts turn to the statute's predecessor, RFRA, which had an analogous requirement that plaintiffs

30

demonstrate a "substantial burden" on their exercise of religion before defendants were called upon to show a compelling interest furthered by the least restrictive means available. See Charles v. Verhagen, 348 F.3d 601, 606 (7th Cir. 2003); Borzych v. Frank, 340 F. Supp. 2d 955, 967 (W.D. Wis. 2004).

Under RFRA, a substantial burden "is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." Mack v. O'Leary, 80 F.3d 1175, 1179 (7th Cir. 1996), vacated on other grounds, 522 U.S. 801 (1997). Both the security of correctional facilities and budgetary concerns have been recognized as compelling governmental interests. Id. at 1190; Luckette v. Lewis, 883 F. Supp. 471, 480 (D. Ariz. 1995) (stating that "two of the most compelling penological interests are budgetary concerns and safety concerns"). Whether prisons employ the least restrictive means depends upon the facts of the specific case; however, courts have given deference to the judgment of prison authorities in this regard. Mack, 80 F.3d at 1180.

The threshold inquiry under RFRA is "whether the statute [or conduct] in question substantially burdens a person's religious practice. If there is no substantial burden, RFRA does not apply." Crosley-El v. Berge, 896 F. Supp. 885, 887 (E.D. Wis. 1995) (internal quote marks omitted, alteration in original).

The only exhausted claim related to plaintiff's use of his religious name not barred by RLUIPA's four-year statute of limitations is plaintiff's claim that defendant Bertrand dismissed his inmate complaint challenging the fact that a prison official at GBCI refused to send a letter out of prison from "Tayr Kilaab/Casteel." Defendants argue that the refusal

31

to send out this piece of mail did not substantially burden plaintiff's exercise of his religion because the name on the mail was not plaintiff's legally changed religious name – Tayr Kilaab al Ghashiyah.

It is undisputed that the challenged piece of mail incorporated only parts of both plaintiff's religious name and convicted name.  That being so, prohibiting plaintiff from sending out mail which, by plaintiff's own admission, does not even include his full religious name cannot seriously be said to substantially burden his religious exercise.  Moreover, as I have previously recognized, the requirement that the plaintiff follow a policy requiring him to include his dual-name on his mail does not violate his rights under the First Amendment or RLUIPA.  (Order of March 28, 2005, Docket #160 at 11, FN 6.)  It follows, then, that precluding him from sending mail which does not fully comply with the dual-name policy does not infringe on his First Amendment or statutory rights under RLUIPA.    Thus, defendants are entitled to summary judgment on plaintiff's religious name claims under the First Amendment and RLUIPA.

## 2.    Remaining First  Amendment Claims

Defendants argue that they are also entitled to summary judgment on the two religious name claims under the First Amendment stemming from defendant McCaughtry's dismissal of two inmate complaints bearing his legally changed religious name.  Prisoners retain First Amendment rights to express themselves and to practice their religion, but a regulation that infringes an inmate's free exercise of these rights will nonetheless survive constitutional challenge if prison administrators can establish that the regulation is a rational means of furthering a legitimate penological interest.  O'Lone v. Estate of Shabazz, 482 U.S.

Case 2:01-cv-00010-LA    Filed 09/29/06    Page 32 of 37    Document 218

342, 351-52 (1987); <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); <u>Tarpley v. Allen County, Ind.</u>, 312 F.3d 895, 898 (7th Cir. 2002). As previously noted, at all relevant times, plaintiff had a First Amendment right to use his legally changed name, at least in conjunction with his committed name. <u>See</u> <u>Malik</u>, 71 F.3d at 727. Plaintiff contends that defendant McCaughtry violated his rights when he (1) dismissed an inmate complaint alleging plaintiff received mail after his legal name was crossed off it (WCI-1991-691); and (2) dismissed an inmate complaint alleging that legal documents addressed to "Tayr Kilaab al Ghashiya" had been returned to sender (WCI-1991-2352).

Defendants argue that there was no constitutional violation in this case because, at the time of the alleged conduct, plaintiff had not provided documentation showing that he had legally changed his name, and therefore defendant McCaughtry did not knowingly participate in the alleged deprivation.

An individual cannot be held liable in an action under §1983 unless he caused or participated in the constitutional deprivation. <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983). A supervisor cannot be held liable under §1983 under the theory of respondeat superior. It is well-settled that, "[w]ithout a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." <u>Id.</u> The requisite causal connection is satisfied if the defendant set in motion a series of events that he knows or should reasonably have known would cause others to deprive the plaintiff of his constitutional rights. <u>See</u> <u>Bausch v. Sumiec</u>, 139 F. Supp. 2d 1029, 1038 (E.D. Wis. 2001) (citing <u>Conner v. Reinhard</u>, 847 F.2d 384, 397 (7th Cir. 1988)).

33

The record in this case shows that when the ICI investigated both of these complaints she noted that plaintiff had not provided WCI with any documentation establishing that his name had been legally changed.  (DPFF at ¶¶171 and 178-181.)  Moreover, plaintiff did not provide such documentation even when asked to do so by the ICI as she was investigating the second complaint.  (DPFF at ¶¶178-179.)  According to the record, WCI did not receive a copy of the Name Change Order until May 24, 1993.  (DPFF at ¶183.)

Plaintiff has produced no competent evidence to dispute defendants' assertions.  The fact that plaintiff's name change petition was not opposed by the DOC does not constitute evidence that defendants were aware of the name change.  This is especially so in view of the sworn testimony of Pamela Fuller, the Registrar at WCI, that the DOC was not aware of plaintiff's petition for a name change.  (Fuller Aff. at ¶6; Docket at ¶188.)  Moreover, the unauthenticated document attached to plaintiff's brief designated "Legal Notice" does not provide notice of his legal name change as it does nothing more than identify himself as a "resident alien" and "natural inhabitant of the planet earth" and threaten litigation if his political or civil rights are violated.  In addition, there is no proof that such "Legal Notice" was in fact sent to anyone at the DOC much less WCI where defendant McCaughtry was the warden.

The undisputed evidence shows that when defendant McCaughtry dismissed inmate complaints WCI-1991-691 and WCI-1991-2352, he was not aware that plaintiff had legally changed his name from John Casteel to Tayr Kilaab al Ghashiyah.  Therefore, plaintiff has not met his burden of showing that defendant McCaughtry knowingly deprived plaintiff of his rights or knowingly caused others to do so.  As a result, defendant McCaughtry is entitled to summary judgment on the plaintiff's First Amendment claims under §1983.

34

**E.      Remaining Claims for Injunctive Relief**

Although I have ruled that defendants are entitled to qualified immunity from damages on plaintiff's religious diet claims under the First Amendment and RLUIPA,  plaintiff also seeks injunctive relief in connection with his religious diet claims.[14]  Defendants argue that his claim for injunctive relief is moot.

The two exhausted claims concerning plaintiff's religious diet are against officials at OSCI and RCI.  Plaintiff is currently incarcerated at WCI.  Therefore, his request for injunctive relief against the officials at OSCI and RCI is moot unless plaintiff can demonstrate that he is likely to be re-transferred.  Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996).  Allegations of a likely retransfer may not be based on mere speculation.  Id. at 811 (citing Preiser v. Newkirk, 422 U.S. 395, 403 (1975)).

Here, plaintiff states in his opposition to defendants' motion for summary judgment that "[i]t is likely he will be transferred to either OSCI or RCI because he will have to participate in a drug program conducted at these prison facilities."  (Docket #185 at 16.) This unsubstantiated allegation does not amount to a "showing" or "demonstration" of the likelihood of transfer.  Higgason, 83 F. 3d at 811.  Plaintiff has not pointed to anything in the record supporting his estimate that his retransfer is "likely."  Therefore, plaintiff's request for injunctive relief on the religious diet claims is moot, and defendants are entitled to summary judgment on such claim.

---

[14] Plaintiff's requests for injunctive relief with respect to his religious property claims under RLUIPA and the First Amendment have previously been dismissed by the court in its order of March 28, 2005.  (Docket #160 at 12.)  Furthermore, I need not address defendants' mootness argument concerning plaintiff's request for injunctive relief as to the religious name claims under the First Amendment and RLUIPA since those claims have been dismissed, in their entirety, on the merits.

35

## VI. CONCLUSION

In summary, plaintiff was permitted to proceed on claims that (1) defendants denied him use of his religious name in violation of the First Amendment; (2) defendants unlawfully denied him the right to use his religious name in violation of RILUPA; (3) defendants unlawfully denied him a religious diet in violation of RILUPA and the Free Exercise Clause; and (4) defendants policies relating to his religious practices were discriminatory and in violation his rights under the First Amendment, Equal Protection Clause of the Fourteenth Amendment, and RUILPA. Plaintiff exhausted his administrative remedies with respect to his first three claims. I dismiss plaintiff's First Amendment and RFRA religious dietary claims on the grounds of qualified immunity. I grant summary judgment for defendants on the merits of plaintiffs' First Amendment and RILUPA religious name claims. With respect to plaintiff's First and Fourteenth Amendment religious property claims, I conclude that plaintiff properly alleged damages and, therefore, those claims survive. Further, defendants have not moved for summary judgment on plaintiff's religious property RUILPA claims, and such claims also survive.

For the foregoing reasons,

**IT IS ORDERED** that defendant Macht is **DISMISSED**.

**IT IS FURTHER THEREFORE ORDERED** that defendants' motion for summary judgment (Docket #197) is **GRANTED IN PART AND DENIED IN PART** as described herein.

36

Dated at Milwaukee, Wisconsin this 29 day of September, 2006.

/s_____
LYNN ADELMAN
District Judge